DETERMINED IN THE

# FIFTH DEPARTMENT,

AT

# GENERAL TERM,

## March, 1886.

---

GEORGE G. ROE, Appellant, *v.* WILLIAM D. CAMPBELL, Respondent.

*Conversion — any unauthorized exercise of dominion over the property constitutes a conversion — when an assertion of title and a denial of the demandant's title constitute it.*

The plaintiff sold a buggy, conditionally, to one Broderick, retaining in himself the title thereto until a note for the purchase-price given by Broderick should be fully paid. Before the note had been paid Broderick sold the wagon to the defendant. Upon the trial of this action, brought by the plaintiff to recover damages for an alleged conversion of the wagon by the defendant, evidence was given tending to show that while the defendant had possession of the wagon the plaintiff notified him of his, the plaintiff's, title and demanded possession, and that subsequently the wagon was removed from the defendant's barn, at Wolcott village, to Westbury, six miles distant, by the direction or with the consent of the defendant, and was there stored or kept by him.

The plaintiff's counsel requested the court to charge that such removal, under the circumstances, was a conversion. The judge charged that it was a conversion if done by the defendant with any intention or purpose to hinder the plaintiff, and declined to charge otherwise.

*Held,* that the judge erred in refusing to charge as requested, as it is well settled that any unauthorized exercise of dominion over the property of another is a conversion without regard to the intent with which the act is done. If the rightful owner has been deprived of his property by some unauthorized act of another assuming dominion or control over it, the latter is liable for a conversion. (SMITH, P. J., BARKER and BRADLEY, JJ.)

The plaintiff's counsel also requested the court to charge that if, in reply to a demand for the wagon, the defendant said "if you have any better title to the buggy than I have, take it," such reply amounted to a conversion. The request was refused, the court charging that it was for the jury to say what the idea to be conveyed was.

*Held*, that the court erred in refusing to charge as requested. (SMITH, P. J., and BARKER, J.)

APPEAL from a judgment of the Wayne County Court, entered upon a verdict in favor of the defendant, and from an order denying a motion for a new trial made on a case.

*Vandenberg & Saxton*, for the appellant.

*J. W. Hoag*, for the respondent.

SMITH, P. J.:

The action is for the alleged conversion of a buggy wagon, which the plaintiff sold conditionally to one Broderick, retaining the title in himself until a promissory note, which Broderick gave for seventy-five dollars, part of the purchase-price of the wagon, should be fully paid. The wagon was delivered to Broderick at the time of sale, which was in May, 1881, and in the next spring Broderick went from the country, leaving a part of the note unpaid. Before he went away he sold a buggy wagon to defendant, and, although its identity was disputed, there was evidence to show that it was the same buggy which the plaintiff sold to Broderick. The judge correctly charged the jury that if it was the same buggy, the title to it was in the plaintiff, and the defendant acquired neither title nor right to the possession, by his purchase from Broderick.

The only questions which I deem it material to consider arise upon certain exceptions taken by the plaintiff's counsel to the charge of the judge, and his refusals to charge upon the subject of conversion. There was evidence tending to show that while the defendant had possession of the buggy, the plaintiff notified him of the plaintiff's title and demanded possession, and that subsequently the buggy was removed from the defendant's barn, at Wolcott village, to Westbury, six miles distant, by the direction or with the consent of the defendant, and was there stored or kept by the defendant. The plaintiff's counsel requested the court to charge

the jury that such removal, under the circumstances, was a conversion. The judge charged that it was a conversion if done by the defendant with any intention or purpose to hinder the plaintiff, and he declined to charge otherwise. The charge and also the refusal were duly excepted to. In these respects, we think the judge erred.

It is well settled that any unauthorized exercise of dominion over the property of another is a conversion, without regard to the intent with which the act is done. If the rightful owner has been deprived of his property by some unauthorized act of another assuming dominion or control over it, the latter is liable for a conversion.

In *Cobb* v. *Dows* (9 Barb., 230), Brown, J., discussing the question of what in law will amount to a conversion, said : " The proof need not show a tortious taking, or that the defendants acted in bad faith. If it should appear that they obtained the goods fairly from a person whom they had reason to think was the true owner, or if they acted under a mistake as to the plaintiff's title, or under an honest but mistaken belief that the property was their own, they would still be liable to the plaintiffs if their acts in regard to it amount to a conversion. If they have taken it into their own hands or disposed of it to others, or exercised any dominion over it whatever, they are guilty of the conversion, and their liability to the plaintiffs is established." He cites several cases in which the defendants were charged with a conversion upon that principle.

In *Boyce* v. *Brockway* (31 N. Y., 490) the defendant, a dealer in butter, received from one Brown, who bought butter for him and also for the plaintiffs, a lot of butter in firkins, some of which belonged to the plaintiffs. The defendant had a large quantity in his warehouse, and afterwards shipped the whole to New York as his own. At the trial, having given evidence tending to show that he received the butter in good faith, supposing it to be his own, and without any knowledge that it belonged to the plaintiffs, he requested the court to charge that " in that case if he took the same care of it as of his own and it was lost without his fault, this action was not sustained." The request was declined. On review in the Court of Appeals the ruling was sustained, Davis, J., speaking for the whole court, said : " The charge as requested would have been proper if the defendant had, under such circumstances, simply received

the butter and stored it in his warehouse. Such an act would not have been the exercise of such dominion over it as would amount to a conversion without proof of a demand and refusal. There would be no sufficient assumption of ownership by a mistaken acceptance of the property so delivered, to render him chargeable for any relation beyond that of bailee; but quite a different question arose when he shipped the butter to New York *as his own.* That was an assumption of dominion, which, whether founded on mistake or not, was in hostility to the ownership of plaintiffs." The language of Judge BROWN, in *Cobb* v. *Dows,* above referred to, was cited with approval. The same doctrine is asserted in *Spraights* v. *Hawley* (39 N. Y., 441) and *Laverty* v. *Snethen* (68 id., 522, 527). Applying that principle to this case, if the defendant, on being notified of the plaintiff's title and demand of possession, had simply stored the wagon in his barn at Wolcott, where it was at the time of the demand, while he was availing himself of the plaintiff's consent to take time to consider whether he would comply with the demand, he would not have been liable. But by removing the wagon, or permitting it to be removed to a distant point, and there used or kept as his own, he exercised such dominion over it as made him liable for a conversion, without regard to his intent or purpose in so doing. It was not a mere asportation, as the respondent's counsel suggests; it was an asportation *for the use of the defendant,* and that is a conversion. (Addison on Torts, 131.) A very slight agency or interference will make one liable in trover. (5 Denio, 532.)

The plaintiff's counsel also requested the court to charge that if, in reply to a demand, the defendant said " if you have any better title to the buggy than I have, take it," such reply amounted to a conversion. The request was declined, and the court charged that it was for the jury to say what the idea to be conveyed was; it was for them to say whether it was a conversion. There was no question but that such reply was made, and it was not claimed that the defendant delivered or tendered the buggy. The defendant testified that in the several interviews with Roe and his attorney, Saxton, he made that reply in substance.

We think the plaintiff was entitled to the instruction requested by him. The reply was an assertion of some title in the defendant and a setting of it up in opposition to the plaintiff's claim. It was

a proposal to try titles with the plaintiff, and a refusal to give up the property until the plaintiff should establish his to be the better title. That, of course, could only be done by a resort to the law. In *Davies* v. *Nicholas* (7 Carr. & Payne, 339), the defendant, when the goods were demanded of him, said that he should do nothing but what the law required, and he did not produce or tender the goods. Held, sufficient evidence of a conversion. (Addison on Torts, 136.)

It is unnecessary to consider the other questions discussed by counsel.

For the reasons above stated, the judgment and order should be reversed, and a new trial had in the Wayne County Court, costs to abide event.

BARKER, J., concurred; BRADLEY, J., concurred in result on the ground first stated; HAIGHT, J., not voting.

Judgment and order reversed and new trial ordered in the Wayne County Court, with costs to abide event.